UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X   **Docket No.:**
JOSEPH MULLER,

                                        Plaintiff,

            -against-                                              **COMPLAINT**

COUNTY OF NASSAU, NASSAU COUNTY SHERIFF
ANTHONY J. LaROCCO, in his individual and official
capacities, and CORRECTIONS OFFICER JOHN DOES
#1-10 (fictitiously named), in their individual and official        **JURY TRIAL DEMANDED**
capacities,

                                        Defendants.
-------------------------------------------------------------------- X

Plaintiff JOSEPH MULLER, by his attorneys, Horn Wright, LLP, complaining of

Defendants COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY J. LaROCCO,

in his individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10

(fictitiously named), in their individual and official capacities, alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which Plaintiff JOSEPH MULLER ("MULLER"

and/or "Plaintiff") seeks relief from Defendants COUNTY OF NASSAU, NASSAU COUNTY

SHERIFF ANTHONY J. LaROCCO, in his individual and official capacities, and

CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and

official capacities (hereinafter, collectively "Defendants") committing acts under color of law and

depriving Plaintiff of rights secured under 42 U.S.C. § 1983 grounded in rights secured to him

under the Eighth and Fourteenth Amendments to the Constitution of the United States and laws of

the State of New York.

1

2.      Plaintiff alleges that Defendants engaged in unlawful conduct. Specifically, during the course of Plaintiff's detention at the Nassau County Correctional Center, Plaintiff was subjected to a vicious assault by another inmate causing physical harm and extreme pain and suffering in violation of Plaintiff's Constitutional rights and New York State laws. Defendants' deliberate indifference to Plaintiff's safety caused his exorbitant injuries and violated his Eighth and Fourteenth Amendment rights against cruel and unusual punishment.

3.      Plaintiff seeks damages, both compensatory and punitive, award of costs, disbursements, interest, attorney's fees, and such other and further relief as this Court deems just and equitable.

## JURISDICTION

4.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Eighth and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983 and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned Constitutional provisions.

## VENUE

5.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Nassau; the actual place of employment of the individually named Defendants and Doe Officers is within the County of Nassau in the Eastern District of New York; and the County of Nassau is within the jurisdiction of the Eastern District of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      Plaintiff attempted to fulfill the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a), requiring inmates to exhaust available, administrative remedies prior to

filing suit under 42 U.S.C. § 1983 alleging violations of their Constitutional rights, but was denied access to the process and/or prevented from filing such.

## NOTICE OF CLAIM

7.      Plaintiff filed a timely Notice of Claim with the County of Nassau on or about January 21, 2025 in connection with the incident that occurred on or about October 23, 2024.

8.      Defendant COUNTY noticed and conducted a hearing pursuant to NY Gen. Mun. Law § 50-h in connection with the aforementioned Notice of Claim on April 3, 2025.

9.      More than 30 days have elapsed since the filing of the Notice of Claim, and adjustment or payment thereof has been neglected or refused.

## THE PARTIES

10.      Plaintiff JOSEPH MULLER is a resident of the United States who lives within the State of New York.

11.      Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY ("COUNTY") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

12.      Upon information and belief, at all relevant times described herein, Defendant COUNTY, by its agents and/or employees, owned, operated, maintained, possessed, supervised, and controlled the Nassau County Correctional Center ("NCCC") and all Corrections Officers thereof, and is responsible for providing a safe and secure environment for detainees in its custody. COUNTY is charged by the laws of the State of New York with authority to maintain the NCCC and is responsible for its confinement conditions and for the treatment of its inmates.

13.      Upon information and belief, at all relevant times described herein, Nassau County Sheriff's Department ("NCSD"), by its agents and/or employees, operated, maintained, and

controlled the NCCC and all Corrections Officers thereof, and is responsible for providing a safe and secure environment for detainees in its custody.

14.    At all relevant times herein, Defendant NASSAU COUNTY SHERIFF ANTHONY J. LaROCCO ("LaROCCO") was and is the Sheriff of the County of Nassau, acting under color of state law, who is being sued herein in his individual and official capacities, and is responsible for providing a safe and secure environment for detainees in his custody. Defendant LaROCCO is responsible for the day-to-day operations of NCCC. As Sheriff, he has custody, control, and charge of the NCCC and its inmates. LaROCCO is legally responsible, in whole or in part, for the operation of the NCCC, for the conditions therein, and the health and safety of persons confined or incarcerated there.

15.    Upon information and belief, at all relevant times described herein, Defendant CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named) ("DOES #1-10") are individuals and employees of COUNTY with an actual place of employment within the County of Nassau, State of New York, who are being sued in their individual and official capacities. At all relevant times described herein, DOES #1-10 were acting under color of state law within the scope of their employment as Correction Officers and/or Supervisors employed by Defendant COUNTY, and work under the supervision, direction, and/or control of their supervisors in the NCSD and NCCC. They were responsible for inmate movement within NCCC, housing designation and/or assignments, inmate classifications, and/or for leaving an officer-post unattended while inmate(s) assaulted MULLER, without any Corrections Officer(s)' intervention whatsoever.

## FACTUAL ALLEGATIONS

16.    At all relevant times herein, Plaintiff MULLER was lodged at NCCC as a pre-trial detainee under the care and custody of Defendants.

4

17.    NCCC is located at 100 Carman Avenue, East Meadow, New York and, on information, NCCC is an agency, subdivision, and/or instrumentality of COUNTY.

18.    NCCC has a history of, *inter alia,* inmate on inmate violence in part due to mismanagement, understaffing, improper inmate classification, improper housing designation, overcrowding, inability to supervise/control gang activity, lack of control over contraband activity, and lack of mental health services.

19.    Defendants are well aware of the aforementioned deficiencies.

20.    On or about October 23, 2024, Plaintiff MULLER was a pretrial detainee at NCCC.

21.    On or about October 23, 2024, Plaintiff MULLER was at NCCC when, unexpectedly, he was viciously attacked by another inmate. Upon information and belief, there was more than one attacker.

22.    Plaintiff MULLER was punched and kicked and sustained a broken jaw and severely injured his left hand. MULLER sustained serious and grave injuries as a result of the vicious attack.

23.    MULLER was severely injured and calling for assistance, but no one came despite the fact that DOES were in close proximity to MULLER.

24.    DOES assigned to the area where Plaintiff's assault occurred were present but failed to take any action. In point of fact, Plaintiff had complained to DOES that he had been threatened and had requested to be transferred as he feared for his life.

25.    Plaintiff complained to DOES that he was in pain and needed immediate medical attention. Plaintiff had visible injuries.

26.     Plaintiff's requests for medical attention were ignored and, despite it being apparent that Plaintiff had suffered serious physical injuries, Plaintiff was denied medical attention by Defendants.

27.     Defendants have a duty to provide competent medical and custodial care to their pre-trial detainees.

28.     As a result of the attack, Plaintiff MULLER suffered from a broken jaw, injuries to his left hand, abrasions, contusions, psychological anguish, permanent injuries, and disabilities.

29.     Since this incident, Plaintiff is aware of other individuals who suffered the same and/or similar fate as he did where areas within the facility are left unattended and/or understaffed by Corrections Officers during which time these individual(s) have been assaulted.

30.     That the aforementioned assault and beating occurred despite MULLER's pleas for the Corrections Officers to assist and/or protect him.

31.     Defendants knew and were aware of the substantial risk to MULLER, including to his health and safety. Despite this knowledge, Defendants disregarded said risk.

32.     At all relevant times mentioned in this Complaint, Defendants, each of them, separately and in concert, engaged in acts and omissions which constituted deprivation of the Constitutional rights, privileges, and immunities of Plaintiff and, while these acts were carried out under color of law, Defendants had no justification or excuse in law; the acts were instead gratuitous, illegal, improper, and unrelated to any activity in which Corrections Officers may appropriately and legally engage in the course of protecting persons, detainees, prisoners, and property, or ensure civil order.

33.     At all relevant times mentioned in this Complaint, Defendants had the power and the duty to restrain the other inmates and prevent them from violating the law by assaulting and

injuring Plaintiff; each of the Defendants failed and/or refused to perform that duty and failed to protect Plaintiff, thereby becoming a party and acting in concert to harm and bring about the injuries inflicted upon Plaintiff.

34.     That the injuries Plaintiff suffered were caused solely by the conduct of Defendants, and Plaintiff in no way contributed to or caused the injuries he suffered.

35.     Defendants' intentional, reckless, grossly negligent, or deliberately indifferent behavior caused MULLER conscious pain and suffering, permanent physical injuries, and emotional harm.

36.     As a direct and proximate result of the acts of Defendants, the injuries and damages sustained by MULLER from the deprivation of his Eighth Amendment and Fourteenth Amendment rights include: a broken jaw, injuries to his left hand, abrasions, contusions, psychological anguish, permanent injuries and disabilities, mental anguish, and emotional distress.

37.     All the alleged acts, misdeeds, and omissions committed by DOES #1-10 described herein for which liability is claimed were done either intentionally, knowingly, or recklessly, and their proscribed conduct meets all of the standards for imposition of punitive damages.

38.     Defendants' conduct was the proximate cause of Plaintiff's injuries.

39.     The injuries suffered by Plaintiff are permanent in nature.

### COUNT I
### VIOLATION OF PLAINTIFF'S EIGHTH
### AND FOURTEENTH AMENDMENT RIGHTS (§ 1983)
### *(Against All Defendants)*

40.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

41.    Defendants incarcerated Plaintiff under conditions that posed a substantial risk of serious harm due to their mismanagement, understaffing, improper inmate classification, improper housing designation, overcrowding, inability to supervise/control gang activity, lack of control over contraband activity, and lack of mental health services.

42.    Defendants incarcerated Plaintiff under conditions that posed a substantial risk of serious harm by virtue of their mismanagement, understaffing, improper inmate classification, improper housing designation, overcrowding, inability to supervise/control gang activity, lack of control over contraband activity, and lack of mental health services.

43.    Defendants knew that Plaintiff faced a substantial risk of serious harm by (a) virtue of Plaintiff's pleas to be transferred due to threats made against him, as well as Defendants' mismanagement, understaffing, improper inmate classification, improper housing designation, overcrowding, inability to supervise/control gang activity, lack of control over contraband activity, and lack of mental health services, and then (b) being left alone in a housing area, without a guard's protection, so that other violent inmates could have free reign and access to Plaintiff.

44.    Defendants knew that Plaintiff faced a substantial risk of serious harm within the correctional facility and/or his housing area and, despite this knowledge, Defendants nonetheless left Plaintiff alone in the correctional facility and/or housing area, without adequate and sufficient guard protection, so that inmates with violent tendencies and/or mental health issues could have free reign and access to Plaintiff.

45.    Defendants' knowledge of the pressing substantial risks is further buttressed by the history of like-violence at NCCC. In fact, the NCCC keeps track of inmates with violent tendencies, mental health issues, and/or inmates' gang affiliations. The risk of serious harm to

Plaintiff is accentuated, objectively, by the serious harm that materialized. Specifically, Plaintiff was brutalized, sustaining a laceration to his face.

46. Defendants failed to take reasonable measures to abate the known substantial risk of serious harm to Plaintiff and, indeed, in leaving the room unattended, allowing Plaintiff to be unprotected and assaulted. Defendants failed to take even the ordinary violence-prevention measures already in place.

47. In light of Defendants' failures, the known and substantial risk of serious harm, and the failure to take reasonable measures to abate this risk, Defendants exhibited deliberate indifference to Plaintiff's safety from other inmates.

48. In doing so, Defendants denied Plaintiff the baseline civilized requirements of life's necessities, subjected him to unnecessary and wanton infliction of pain, imposed cruel and unusual punishment, and violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

49. That by reason of the violation of Plaintiff's Eighth and Fourteenth Amendment rights, he was damaged as set forth herein.

50. The violation of Plaintiff's bodily integrity was unreasonable and without due process of law, in violation of the Eighth and Fourteenth Amendments of the United States Constitution.

51. As a proximate result of Defendants' intentional and malicious actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, great mental anguish, and has incurred and will continue to incur expenses for medical and psychological

treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT II**
**VIOLATION OF PLAINTIFF'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS FOR DELIBERATE INDIFFERENCE TO PLAINTIFF'S RIGHTS/VIOLATING PLAINTIFF'S BODILY INTEGRITY (§ 1983)**
*(Against All Defendants)*

52.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

53.    The harm to Plaintiff was foreseeable and a direct result of Defendants' acts and/or omissions.

54.    Defendants acted in conscious disregard of a great risk of serious harm to Plaintiff by allowing the assault, placing Plaintiff in substantial fear for his life and safety, and causing physical and emotional injuries to Plaintiff.

55.    Defendants' conduct was intentional, with deliberate indifference.

56.    Defendants consciously disregarded a great risk that serious harm would result by unlawfully placing Plaintiff in a dangerous situation under color of state law that he otherwise would not have been subjected to but for Defendants' conduct.

57.    Defendants were aware and/or it was reasonably foreseeable that their conduct would cause injuries to Plaintiff.

58.    Defendants used their authority to create an opportunity that otherwise would not have existed for harm to occur.

59.    Defendants' conduct in permitting the assault of Plaintiff constitutes conduct that shocks the conscience and was without any lawful or legitimate basis.

60.    Defendants acted intentionally, with wanton and/or deliberate indifference to Plaintiff's rights.

61.    The aforesaid actions of Defendants constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason in violation of Plaintiff's substantive due process rights guaranteed by the Eighth and Fourteenth Amendments.

62.    As a result of Defendants' willing, wanton, and deliberately indifferent conduct, Plaintiff's Eighth and Fourteenth Amendment rights were violated, and he was unlawfully subjected to a dangerous situation directly caused by Defendants' affirmative actions.

63.    As a proximate result of Defendants' intentional, wanton, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

### COUNT III
### VIOLATION OF PLAINTIFF'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS FOR FAILURE TO PROTECT/INTERVENE (§ 1983)
### *(Against All Defendants)*

64.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

65.     Defendants knew that there was a strong likelihood of harm to Plaintiff but failed to take reasonable measures to intervene and prevent the unlawful conduct, despite having an opportunity to do so.

66.     Upon information and belief, Defendants were on notice of the assaulting inmate(s)' violent propensities to inflict harm on the inmates.

67.     Defendants knew that the assaulting inmate(s) had engaged in this conduct in the past and/or the assaulting inmate(s) violent propensities and/or the assaulting inmate(s) mental status and/or the assaulting inmate(s) gang affiliation.

68.     Despite having such knowledge, Defendants failed to take any remedial or preventative measures to deter the assaulting inmate(s) and/or prevent the assaulting inmate(s) from continuing to engage in violent acts.

69.     Had Defendants intervened to stop the unlawful conduct of the assaulting inmate(s) before October 23, 2024, Plaintiff would not have been subjected to the events described herein.

70.     As a result of Defendants' failure to protect and failure to intervene, Plaintiff's Eighth and Fourteenth Amendment rights were violated.

71.     As a proximate result of Defendants' intentional, wanton, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

<u>COUNT IV</u>
<u>FAILURE TO SUPERVISE AND FAILURE TO TRAIN (§ 1983)</u>
<u>*(Against Defendants COUNTY and LaROCCO)*</u>

72.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

73.    The assaults on vulnerable inmates by others is and was foreseeable.

74.    Defendants COUNTY and LaROCCO were responsible for supervising, overseeing, and controlling their subordinates in the NCSD and NCCC, including DOES #1-10.

75.    Defendants COUNTY and LaROCCO had an express and/or implied duty to provide a reasonably safe environment for their inmates, including Plaintiff. At a minimum, they had a duty to keep him from being unlawfully assaulted by other inmates, which was foreseeable based upon their past instances of inmate violence, instances of contraband, understaffing, drugs, and other illegal activity at the correctional facility, which were known to the senior officers and supervisors in the NCSD and NCCC.

76.    In fact, it was well known throughout the community that assaults upon vulnerable inmates were a regular occurrence.

77.    Despite having this knowledge, Defendants COUNTY and LaROCCO failed to take any remedial measures to prevent foreseeable violent acts by other inmates.

78.    The countenancing of this behavior created an environment within the NCCC wherein violent inmates were allowed to continue with their violent behavior, which led to the Constitutional rights of vulnerable citizens being violated, including Plaintiff.

79.    Defendants COUNTY and LaROCCO intentionally failed to adequately supervise, control, oversee, train, and/or monitor DOES #1-10, and failed to implement measures to prevent

DOES #1-10 and other Corrections Officers from neglecting their duties and/or conspiring with each other to cover up their official misconduct.

80.    Defendants COUNTY and LaROCCO intentionally failed to adequately supervise, control, oversee, train, and/or monitor DOES #1-10 and other Corrections Officers.

81.    Defendants COUNTY and LaROCCO negligently hired, retained, and/or supervised DOES #1-10 when they knew or should have known that they posed a threat to vulnerable inmates.

82.    Defendants COUNTY and LaROCCO knew or should have known of DOES #1-10's conduct and/or omissions and/or lack of inmate supervision and/or leaving their posts which caused Plaintiff's injuries, prior to the occurrence of the injuries, given the knowledge of other instances of assaults that predate October 23, 2024.

83.    Defendants COUNTY and LaROCCO owed a duty of care to all persons, including Plaintiff, who were likely to come into the influence of DOES #1-10, in their roles as Corrections Officers, to ensure that DOES #1-10 performed their correctional staff duties and protected inmates so as they were not injured by inmates with violent tendencies.

84.    At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

85.    Upon information and belief, Defendants COUNTY and LaROCCO were aware that there was a substantial likelihood that permitting DOES #1-10 to carry on their regular duties as Corrections Officers would deprive the inmates of their civil rights and/or that inmates such as Plaintiff would be assaulted, but failed to take adequate measures to resolve the wrong.

86.    In fact, upon hearing of the allegations, Defendants COUNTY and LaROCCO still failed to take any action, essentially countenancing this behavior throughout NCCC.

87.    COUNTY and LaROCCO's, and other NCSD and NCCC supervisors', failure and refusal to adequately investigate DOES #1-10 for their violative actions, inmates with tendencies for violence, acquiescence in DOES #1-10's conduct, failure to take any remedial action against DOES #1-10, allowing DOES #1-10 to remain employed as officers with COUNTY, deliberate indifference in their supervision of DOES #1-10, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by DOES #1-10 and other Corrections Officers, subjects them to supervisory liability for the October 23, 2024 assault and battery on Plaintiff.

88.    Defendants COUNTY and LaROCCO's subordinates – namely, DOES #1-10 – deprived Plaintiff of his Eighth and Fourteenth Amendment right to safety from other prisoners, as set forth herein.

89.    Defendants COUNTY and LaROCCO created a policy or custom, or acceded to the continuance of a policy or custom, under which the Eighth and Fourteenth Amendment violations could occur.

90.    In particular, Defendants COUNTY and LaROCCO created or acceded to a policy or custom of inmate punishment in which the NCCC disciplined (and disciplines) alleged trouble-maker inmates by placing them in circumstances of high risk of serious harm to others without taking reasonable steps to prevent that harm from materializing.

91.    In particular, Defendants COUNTY and LaROCCO created or acceded to a policy or custom of allowing inmate upon inmate assaults by allowing Corrections Officers to go unpunished and undisciplined when they leave their posts knowing that certain inmates present a danger to one another.

92.     In particular, Defendants COUNTY and LaROCCO created or acceded to a policy or custom of allowing inmate upon inmate assaults by allowing and permitting their Corrections Officers to leave their posts knowing that certain inmates present a danger to one another by virtue of their reckless disregard and tacit acceptance demonstrated by the numerous and abundant acts of violence which occur when officers leave their posts in areas where it is known that inmates with violent tendencies present a danger to one another.

93.     In creating or acceding to this unconstitutional policy, Defendant LaROCCO acted under color of law, purportedly in the performance of his official duties as Sheriff of Nassau County.

94.     As a proximate result of Defendants' intentional, wanton, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

<u>**COUNT V**</u>
<u>**DENIAL AND FAILURE TO PROVIDE MEDICAL TREATMENT PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS**</u>
<u>***(Against All Defendants)***</u>

95.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

96.    Defendants had an affirmative duty to provide and administer health and medical services to Plaintiff and other NCCC pre-trial detainees.

97.    Defendants, as previously alleged, had a duty and obligation to provide Plaintiff and other pre-trial detainees of the NCCC reasonable and adequate health and medical services.

98.    Defendants, on information, had knowledge that the health care they provided and/or were responsible for providing to Plaintiff and other pre-trial detainees of the NCCC was deficient, inadequate, and incompetent.

99.    On information, the health and medical care provided by Defendants, or which they were responsible for providing, to Plaintiff failed to meet an acceptable standard of treatment and care in terms of modern medicine, technology, and current beliefs about human decency.

100.    On information, the health and medical care provided by Defendants, or which they were responsible for providing, created an excessive risk to Plaintiff, and the harm to which Plaintiff was exposed was sufficiently serious as to implicate his Constitutional rights.

101.    On information, Defendants knew that Plaintiff's medical condition constituted a serious need for competent and adequate medical care and treatment.

102.    On information, Defendants knew of and ignored the aforesaid excessive risk to Plaintiff's health.

103.    The denial of adequate medical care as aforesaid created a condition of urgency, where pain, emotional distress, disability, permanent injury, or death was likely.

104.    Defendants' policies, practices, customs, actions, and failures to act constituted deliberate indifference to the serious medical needs of Plaintiff.

105.    Defendants were deliberately indifferent to the serious medical needs of Plaintiff.

106.    As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and suffering.

107.    Defendants' conduct demonstrated reckless and/or callous indifference to the federally protected rights of Plaintiff.

108.    As a direct and proximate result of the foregoing, Plaintiff was subjected to cruel and unusual punishment and denial of adequate medical care and treatment.

109.    As a proximate result of Defendants' intentional, wanton, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

## COUNT VI
## MONELL
### *(Against Defendants COUNTY and LAROCCO)*

110.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

111.    Upon information and belief, it was the custom, policy, and practice of COUNTY and LaROCCO to tolerate, condone, and encourage Constitutional violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by Corrections Officers.

112.    Specifically, COUNTY and LaROCCO have a policy and practice of allowing inmate upon inmate assaults by allowing their Corrections Officers to go unpunished and undisciplined when they leave their posts knowing that certain inmates present a danger to one another.

113.    Specifically, COUNTY and LaROCCO have a policy and practice of allowing inmate upon inmate assaults by allowing and permitting their Corrections Officers to  leave their posts knowing that certain inmates present a danger to one another by virtue of their reckless disregard and tacit acceptance demonstrated by the numerous and abundant acts of violence which occur when officers leave their posts in areas where it is known that certain inmates present a danger to one another.

114.    In doing so, COUNTY and LaROCCO implement and accede to a policy and practice that deprives inmates of the baseline civilized requirements of life's necessities, that intentionally or recklessly subjects them to unnecessary and wanton infliction of pain, that imposes punishment that is cruel and unusual, and that violates inmates' rights under the Eighth and Fourteenth Amendments to the United States Constitution.

115.    Defendants COUNTY and LaROCCO's policy, custom, pattern, and practice of such Eighth and Fourteenth Amendment violations have materialized in serious harm to NCCC inmates repeatedly.

116.    For Plaintiff in particular, Defendants COUNTY and LaROCCO's illegal policy has caused him to incur physical, emotional, and pecuniary harms.

117.    Employees of COUNTY and LaROCCO, such as DOES #1-10 in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be

investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

118.     Employees of COUNTY and LaROCCO, such as DOES #1-10 in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or punishment for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

119.     By failing to supervise, train, and reprimand such Corrections Officers, COUNTY and LaROCCO caused the injuries to Plaintiff through the actions and inactions of DOES #1-10.

120.     By maintaining a *de facto* policy of automatic indemnification, COUNTY and LaROCCO further caused the injuries to Plaintiff through the actions and inactions of DOES #1-10.

121.     Upon information and belief, this custom, policy, and practice of COUNTY and LaROCCO to ignore complaints and/or widespread allegations of assault, battery, and other malfeasance against inmates by other inmates created an environment where foreseeable Constitutional violations by the Corrections Officers were rampant, including the violations of Plaintiff's Constitutional rights by DOES #1-10.

122.     COUNTY and LaROCCO's failure to take action against DOES #1-10 involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

123.     As authorized representatives of Defendants COUNTY and LaROCCO, the Corrections Officers' conduct constituted a custom, policy, and practice which renders Defendants COUNTY and LaROCCO liable to Plaintiff as a "Person" acting under the color of state law.

124.     These customs, policies, and practices which were enforced by Defendants COUNTY and LaROCCO were the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiff's injuries.

125.     Had COUNTY and/or LaROCCO investigated serious complaints of assault and/or Corrections Officers leaving their posts and/or widespread allegations of same prior to October 23, 2024, DOES #1-10 would not have been in a position to violate Plaintiff's Constitutional rights.

126.     COUNTY and LaROCCO are therefore liable for violations of Plaintiff's Constitutional rights as caused by DOES #1-10, as described in more detail in the foregoing paragraphs; and Plaintiff has suffered damages therefrom.

127.     That, by virtue of COUNTY and LaROCCO's, and other NCCC Supervisors', failure and refusal to adequately investigate DOES #1-10's actions, acquiescence in DOES #1-10's conduct, failure to take any remedial action against DOES #1-10, allowing DOES #1-10 to remain employed as an officer with NCCC, gross negligence in their supervision of DOES #1-10, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by DOES #1-10, COUNTY and LaROCCO, which employed these Corrections Officers and policymakers during the relevant time period, exhibited a *de facto* custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

128.     As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred

and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees.

### COUNT VII
### NEGLIGENCE(PENDENT)
### (*Against All Defendants*)

129.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

130.    That upon information and belief, at all times herein mentioned, Defendant COUNTY was the owner of the premises located at NCCC, 100 Carman Avenue, East Meadow, State of New York.

131.    That upon information and belief, at all times herein mentioned, Defendant COUNTY, through its agents, servants, employees, and/or assigns, including Defendants LaROCCO and DOES #1-10, owned, operated, managed, maintained, possessed, supervised, and controlled the premises located at NCCC, 100 Carman Avenue, East Meadow, State of New York.

132.    On or about October 23, 2024, while Plaintiff was an inmate at the location known at NCCC, 100 Carman Avenue, East Meadow, State of New York, he was caused to be negligently, wrongfully, willfully, maliciously, and with gross negligence and willful and wonton disregard for Plaintiff's safety, physically detained, assaulted, beaten, and battered by another inmate(s) and was caused to sustain severe and permanent injuries.

133.    On or about October 23, 2024, Defendants were obligated and owed a duty to Plaintiff to maintain, manage, operate, and control the aforesaid premises, inmates, and activities conducted therein in a reasonably safe and prudent manner.

134.    That Plaintiff sustained the aforesaid injuries wholly and solely due to the negligence of Defendants, their agents, servants, and/or employees without Plaintiff in any way contributing thereto.

135.    On or about October 23, 2024, Defendants, their agents, servants, and/or employees, jointly and severally, individually or in concert, disregarded their duty and conducted themselves in a negligent, reckless, careless, and unlawful manner in failing to provide adequate and sufficient security to protect Plaintiff within NCCC; in failing to have properly trained Corrections Officers or other security personnel; in failing to have properly trained Corrections Officers or other security personnel in sufficient numbers; in having Corrections Officers or other security personnel who were improperly trained or supervised; in failing to timely identify and promptly eject violent inmates; in permitting violent inmates to enter and remain within the correctional facility; in permitting violent inmates to engage in dangerous and hazardous activities within the correctional facility; in failing to discern within a reasonable time that violent inmates were engaged in dangerous and hazardous activities within the correctional facility; in permitting other inmates to have weapons; in placing Plaintiff in danger; in failing to warn Plaintiff of the dangerous and hazardous activities being conducted within the correctional facility; in failing to timely provide Plaintiff with proper medical treatment; in denying proper medical treatment after the incident; in confining Plaintiff to an overcrowded and small cell with multiple inmates; in not abiding by health and safety guidelines; and in conducting themselves in such a negligent, reckless, careless, and unlawful manner as to cause severe injuries to Plaintiff.

136.    That by reason of the wrongful, negligent, and unlawful actions of Defendants, through their agents, servants, and/or employees as aforesaid, Plaintiff was severely injured, bruised, and wounded, suffered, still suffers, and will continue to suffer for some time great

physical pain and great bodily injuries and became sick, sore, lame, and disabled and so remained for a considerable period of time.

137.    That solely as a result of the foregoing, Plaintiff has incurred hospital and medical expenses.

138.    That the limitations set forth in Article 16 of the CPLR do not apply to this action, since one or more of the exceptions apply.

139.    As a proximate result of Defendants' wanton, reckless, grossly negligent, negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries and permanent disability, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00).

## **JURY DEMAND**

140.    Plaintiff demands a Trial by Jury of all causes of action so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff JOSEPH MULLER respectfully requests judgment against Defendants COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY J. LaROCCO, in his individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and official capacities as follows:

A.    Under the First Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

B.      Under the Second Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

C.      Under the Third Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

D.      Under the Fourth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

E.      Under the Fifth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

F.      Under the Sixth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees;

H.      Under the Seventh Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00);

I.      Costs and disbursements of this matter; and

J.      Such other and further relief as the Court deems just and proper.

Dated:  Garden City, New York
        January 20, 2026

Respectfully submitted,
**HORN WRIGHT, LLP**
*Attorneys for Plaintiff*

By:     /s/*Sheetal Paul*
        Sheetal Paul
        400 Garden City Plaza, Suite 500
        Garden City, New York 11530
        Tel: 516.355.9696
        shp@hornwright.com